IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALICIA MARIE PERRY HAKALA,

                OPINION and ORDER

       Plaintiff,

                16-cv-839-bbc

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Alicia Marie Perry Hakala is seeking review of a final decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her claims for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff contends that she has been disabled since June 30, 2010 because of numerous impairments, including bipolar disorder, panic disorder, borderline personality disorder, posttraumatic stress disorder, major depression, anxiety distress disorder, agoraphobia, obesity and back pain.

      On appeal, plaintiff argues that the administrative law judge erred by (1) relying too heavily on plaintiff's daily activities in making a credibility assessment; and (2) failing to give adequate consideration to the opinion of Joanna Green, a social worker who treated plaintiff. For the reasons discussed below, I am remanding the case because I conclude that the

1

administrative law judge did not give an adequate explanation of his reasons for concluding that plaintiff's daily activities undermined her credibility.

The following facts are drawn from the administrative record (AR).

RECORD FACTS

A. <u>Background</u>

Plaintiff Alicia Marie Perry Hakala was born on June 27, 1987, making her 27 years old at the time of the most recent administrative hearing on May 12, 2015. AR 33-34. Plaintiff has three minor children. AR 36. She left high school in tenth grade and received her GED in June 2005. AR 34-35. Initially, plaintiff alleged a disability onset date of February 1, 2011, but late, she r amended the date to June 30, 2010. AR 325. She alleges numerous impairments, including bipolar disorder, panic disorder, borderline personality disorder, PTSD, major depression, anxiety distress disorder, agoraphobia, obesity and back pain. Plaintiff has worked at several jobs in the past but has not engaged in substantial gainful activity since her disability onset date. AR 12-13.

B. <u>Medical Record</u>

On December 17, 2010, plaintiff received a diagnostic assessment at the Human Development Center. Her diagnosis was recurrent severe major depressive disorder and anxiety disorder. AR 528. The examining psychologist recommended outpatient psychotherapy, support from an adult rehabilitative mental health services (ARMH ) worker

and further psychological evaluation. AR 530. On February 15, 2011, plaintiff returned to the Human Development center for a psychological evaluation. Her diagnosis was mood disorder NOS (not otherwise specified), probable PTSD, substance dependency and borderline personality disorder. AR 535.

On July 14, 2011, plaintiff had a psychiatric assessment at Nystrom & Associates, Ltd. AR 507-13. Notes from this assessment indicate that plaintiff had begun taking Effexor to treat her depression immediately after the birth of her third child in June 2011. Id. Plaintiff did not believe Effexor was helping her symptoms, which at that time included anger, depression, mood swings, suicidal thoughts, cutting and anxiety. Id.

On November 19, 2011, the Social Security Administration referred plaintiff to Dr. Lyle Wagner for a consultive examination. AR 517-22. Wagner's diagnosis was recurrent moderate major depressive disorder without psychotic features, PTSD, anxiety disorder NOS and alcohol and cannabis abuse in full sustained remission. AR 521. In his opinion, plaintiff appeared capable of concentrating on moderate to complex instructions and remembering them. Id. He also concluded that plaintiff might have difficulty completing tasks at a reasonable pace and managing stress and pressure in a work environment as a result of depression and anxiety. Id. On a scale of 1 to 10, plaintiff rated her depression level as 7 and stated that she felt hopeless, helpless, irritable and angry. AR 519. She reported daily symptoms of anxiety, including fear and difficulty breathing in busy stores or places. AR 520. With regard to her PTSD, plaintiff described a traumatic history that gave rise to several symptoms, including nightmares, flashbacks and fear of relationships. Id. She

stated that she cooks for her family, completes household chores, enjoys crocheting and occasionally attends AA meetings. AR 519. She reported getting along "poorly" with past coworkers and female supervisors and "average" with male supervisors. Id.

Plaintiff began seeing Joanna Green, MSW, LCSW, on a semi-weekly basis in September 2012. AR 821. It was Green's treating opinion as of July 2, 2013, that plaintiff had bipolar disorder NOS, PTSD, panic disorder with agoraphobia, borderline personality disorder, obesity, high blood pressure and migraines. Id. Green noted more than 20 symptoms that she thought would impair plaintiff's occupational, social and family functioning. Id. She also noted marked limitation in daily activities, social functioning and maintaining concentration, persistence and pace. AR 823. In her opinion, plaintiff was likely to experience one or two episodes of decompensation in a 12-month period and her impairments would be likely to cause her to miss work more than four days a month. AR 824.

In a second treating opinion dated April 7, 2015, Green stated that plaintiff's response to psychotherapy was varied. AR 1077. According to the opinion, "[plaintiff] will improve and then significantly decompensate due to current life stressors." Id. Green also stated that plaintiff was extremely limited in daily activities and social functioning and moderately limited in maintaining concentration, persistence or pace. AR 1079. She thought that plaintiff was likely to experience four or more episodes of decompensation in a 12-month period. Id.

4

On May 27, 2013, plaintiff was hospitalized after attempting to overdose with prescription medication during an argument with her ex-boyfriend. AR 817. While in the emergency room, plaintiff texted her friend to say she would find another way to kill herself once she was released from the hospital. Id. Plaintiff was admitted to the intensive care unit for one day and then transferred to the behavioral health unit until her discharge on May 30. AR 801, 806. Plaintiff later admitted she did not intend to commit suicide and was "trying to prove a point to her ex-boyfriend." AR 811.

On December 11, 2014, plaintiff participated in a pain management consultation to address her chronic back pain. AR 885-90. The consultation notes state that plaintiff was functionally limited by midthoracic back pain and morbid obesity. AR 888. Plaintiff's depression was reportedly controlled with Effexor. Id. She was enrolled in the pain management program, which offered a number of services, including physical therapy, occupational therapy and cognitive behavioral therapy, to address her physical and mental health needs. AR 888-89.

## C. Procedural History

Plaintiff filed for disability insurance benefits and supplemental security income on July 29, 2011. AR 91. Her application was denied on November 30, 2011, and her request for reconsideration was denied on March 9, 2012. AR 167, 177. Plaintiff then filed a request for a hearing before an administrative law judge on May 7, 2012. A hearing was held occurred before administrative law judge Mattie Harvin-Wood on August 7, 2013. AR 183,

5

206. The administrative law judge concluded that plaintiff had the residual functional capacity to perform medium work and determined that plaintiff was able to perform her previous job as a personal care assistant. AR 149, 155.

Plaintiff requested review of the administrative law judge's decision on October 18, 2013. AR 241. On December 22, 2014, the Appeals Council vacated and remanded the decision for (1) failing to consider Green's treating opinion; and (2) finding that plaintiff was able to perform past relevant work, contrary to the vocational expert's testimony. AR 163-65.

On remand, administrative law judge Michael D. Quayle reached the following conclusions: (1) plaintiff suffered from severe impairments of obesity, anxiety disorder (also diagnosed as PTSD), personality disorder and depression, AR 13; (2) plaintiff has the residual functional capacity to perform medium work, but that she has various mental limitations, AR 15; (3) plaintiff is unable to perform past work as a personal care attendant or fast food worker, AR 22; (4) plaintiff is able to perform several jobs in the national economy, such as laundry worker, janitor and hand packager, AR 23.

After the Appeals Council denied plaintiff's request for review, she filed a complaint in the federal district court. AR 1-3.

OPINION

A. <u>Relevant Law</u>

As an initial matter, I note that plaintiff relies on case law from the Eighth Circuit in her brief. This may be because this case was pending in the United States District Court for the District of Minnesota when plaintiff filed her motion for summary judgment. However, more than a month after plaintiff filed her motion (but before the commissioner filed her response), the parties agreed to transfer the case to this district and the court in Minnesota granted the request. Dkt. ##14 and 15. (The parties do not explain why they waited so longer to seek a transfer.) Although Seventh Circuit law is controlling in this district, plaintiff neither asked for permission to file an amended motion relying on the law of this circuit nor filed a reply brie. I see no reason to delay the case to allow plaintiff to amend her brief to include citations to Seventh Circuit law. In any event, the Eighth Circuit law plaintiff cites does not appear to be at odds with the law of this circuit, with possible limited exceptions that I will discuss below.

B. <u>Daily Activities</u>

The administrative law judge concluded that plaintiff had the residual functional capacity

> to perform medium work . . . retaining sufficient mental capacity to concentrate on, understand and remember routine, repetitive 3-4 step and limited detailed instructions, markedly limited for multi-detailed or complex/technical instructions[;] her ability to carry out routine, repetitive 3-4 step and detailed tasks with adequate persistence and pace would be intact, but markedly impaired for complex/technical tasks, and her ability to handle

7

> public contact would be adequate to handle brief, infrequent and superficial contact.

AR 15.

The administrative law judge acknowledged implicitly that plaintiff's own testimony would support greater limitations, but he stated that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they [are] not consistent with the objective medical evidence and other evidence," including "mental status observations, course of treatment, positive response to treatment, her unwillingness to engage in treatment as recommended and her ability to perform her daily activities." AR 22.

Plaintiff contends that the administrative law judge put too much weight on her daily activities, which the administrative law judge said are "fully consistent with the residual functional capacity." AR 19. The administrative law judge also wrote that plaintiff's "daily activities and social activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 20. To support this conclusion, the administrative law judge simply listed various activities of plaintiff's that are discussed in the record. These included the following:

- "providing all care" for her children ;
- cleaning her house and preparing meals;
- bathing, dressing and grooming herself;
- shopping for groceries;
- paying bills;

- visiting with friends and speaking to them over the telephone;

- driving her son to and from school;

- using the internet to search for housing;

- attending court;

- losing 30 pounds as a result of walking and camping;

- crocheting;

- caring for her cat;

- hosting a "big family dinner for Christmas";

- going on social outings with friends;

- selling items on Craigslist.

AR 19-20.

Plaintiff cites <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir. 1995), for the proposition that "[a]n ALJ may not rely on a claimant's limited daily activities to discredit allegations of disabling impairments." I do not read <u>Hogg</u> as broadly as plaintiff does, but I need not linger on that issue because the statement is clearly inconsistent with the law of this circuit. "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." <u>Alvarado v. Colvin</u>, 836 F.3d 744, 750 (7th Cir. 2016) (internal citations omitted).

That being said, the Court of Appeals for the Seventh Circuit has "cautioned ALJs not to equate [daily] activities with the rigorous demands of the workplace." <u>Id</u>. There are

9

"critical differences between activities of daily living and activities in a full-time job." Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). In particular, "a person performing chores has flexibility in scheduling, can receive help, and is not held to a minimum standard of performance, unlike an employee." Stark v. Colvin, 813 F.3d 684, 688 (7th Cir. 2016).

Plaintiff points out that the administrative law judge omitted limitations that she has in performing her daily activities. For example, plaintiff testified that she goes shopping at night so that she does not "have to deal with people" and even then, she brings a friend with her. AR 65. She also testified that she used to read all the time, but now she cannot concentrate long enough to follow the story. AR 68.

The court of appeals has held in multiple cases that the type of daily activities that plaintiff is able to perform do not necessarily render an individual capable of performing full time work on a sustained basis. E.g., Allensworth v. Colvin, 814 F.3d 831, 835 (7th Cir. 2016) ("[S]weep[ing] the floor and do[ing] the dishes [is] faint evidence of [plaintiff's] capacity for full-time, gainful, out-of-home employment."); Meuser v. Colvin, 838 F.3d 905, 913 (7th Cir. 2016) (plaintiff's ability to "do laundry, cook meals, and complete chores" does not show ability to work full time); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (claimant's daily living activities "are fairly restricted (e.g., washing dishes, helping his children prepare for school, doing laundry, and preparing dinner) and not of a sort that necessarily undermines or contradicts a claim of disabling pain"). Particularly because the administrative law judge did not explain *why* he believed that any of the activities he listed undermined plaintiff's credibility, his reliance on those activities requires a remand. Ghiselli

v. Colvin, 837 F.3d 771, 777–78 (7th Cir. 2016) (remand required when administrative law judge did not "identify a basis for his conclusion that the life activities [the plaintiff] reported were inconsistent with the physical impairments she claimed"). See also Shideler v. Astrue, 688 F.3d 306, 310-11 (7th Cir. 2012) (administrative law judge must explain his reasoning and build "logical bridge" from evidence to his conclusion).

Other aspects of the administrative judge's credibility assessment are problematic as well. For example, the administrative law judge stated that plaintiff "failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged." AR 19. He noted five occasions on which plaintiff did not attend appointments during June, July and August 2013. Id. He also cited several treatment notes describing plaintiff's behavior during her appointments. Like a plaintiff's daily activities, "a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility." Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012). However, before an administrative law judge can rely on this factor as a ground for rejecting a claim, he "must first explore the claimant's reasons for the lack of medical care," id., something the administrative law judge failed to do in this case. On remand, the administrative law judge should conduct a new credibility assessment.

B. Social Worker Opinion

Joanna Green was plaintiff's therapist from September 2012 until at least April 2015. AR 823, 1080. In July 2013, Green completed a questionnaire in which she stated that

plaintiff (1) had marked limitations in daily activities, social functioning and maintaining concentration, persistence or pace; (2) would likely have one or two episodes of decompensation in a 12-month period; and (3) would likely miss more than four days of work in a month. AR 823-24. Green completed a second questionnaire in April 2015, stating that plaintiff "will improve and then significantly decompensate due to current life stressors." AR 1077.

The administrative law judge gave "no weight" to Green's opinions on the ground that they were "not supported by the record including [Ms. Green's] own records." AR 21. The administrative law judge relied on the following factors: (1) there was no evidence of "psychiatric hospitalization of extended duration"; (2) the treatment plaintiff received had been "conservative"; (3) plaintiff "did not fully engage" in the treatment that she did receive; (4) one health care provider noted that plaintiff was "trying to manipulate the system to gain benefits"; (5) other evaluations did not show "impaired cognitive function"; and (6) plaintiff "remained social" despite her "allegations of inability to perform daily activities or socializing." AR 20-21.

Plaintiff challenges the administrative law judge's handling of Green's opinions, but her grounds for doing so are not clear. Her argument consists of the following paragraph:

> An ALJ has the duty to develop the record, and must seek clarification of, rather than reject, the opinion of a treating doctor where there are questions concerning the limitations imposed which bear on the issue of the correct RFC. Here, no effort was made to re-contact Joanna Green to obtain further information about the specifics underlying her opinion. Rather than reject the opinions, the ALJ should have re-contacted Joanna Green to obtain additional evidence or clarification, or obtain a consultative evaluation.

12

Dkt. #11 at 10 (citations omitted).

The obvious problem with this argument is that plaintiff does not identify any specific purpose for the administrative law judge to contact Green again. The provision she cites, 20 C.F.R. § 404.1512(e), does not exist. Further, § 404.1512 describes the relative duties of the claimant and the agency to present and request evidence. It says nothing about going back to the medical sources a second time.

The Court of Appeals for the Seventh Circuit has described a duty on administrative law judges to re-contact medical sources, but that duty applies only when the judge cannot discern the basis for the source's opinion. Simila v. Astrue, 573 F.3d 503, 516 (7th Cir. 2009). An administrative law judge is not required to go back to a source simply because he finds an opinion unconvincing. Id. In this case, the administrative law judge rejected Green's opinion not because it was unclear but on the ground that it was inconsistent with other evidence.

Although plaintiff has not articulated a clear basis for challenging the administrative law judge's treatment of Green's opinions, I note that some of the administrative law judge's grounds for rejecting those opinions are the same as those that gave rise to his questioning of plaintiff's credibility. Because I have concluded that the administrative law judge's credibility assessment is flawed and requires a remand, the administrative law judge should reevaluate Green's opinions as well.

In her brief, the commissioner argues that the administrative law judge was justified in disregarding Green's opinion because, as a social worker, she is not an "acceptable medical

13

source" under 20 C.F.R. § 404.1502. This argument is a nonstarter. The administrative law judge did not rely on this ground when rejecting Green's opinion. Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010). He would have had no ground on which to do so because an administrative law judge may not reject an opinion simply because it does not come from a source listed in § 404.1502. Voigt v. Colvin, 781 F.3d 871, 878 (7th Cir. 2015). The administrative law judge did not find that Green lacked the qualifications necessary to provide her opinions, so he was required to consider them, using the factors enumerated in 20 C.F.R. § 404.1527(c). 20 C.F.R. § 404.1527(f); Pierce v. Colvin, 739 F.3d 1046, 1051 (7th Cir. 2014).

ORDER

IT IS ORDERED that plaintiff Alicia Marie Perry Hakala's motion for summary judgment, dkt. #10, is GRANTED and this case is REMANDED to defendant Commissioner of Social Security for further proceedings consistent with this opinion.

Entered this 27th day of April, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge